
SEALED (crossed out)
UNSEALED
2/17/15


FILED
FEB 12 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  LAURA E. DUFFY
   United States Attorney
2  SABRINA L. FEVE
3  Assistant U.S. Attorney
   California Bar No.: 226590
4  Office of the U.S. Attorney
5  880 Front Street, Room 6293
   San Diego, CA 92101
6  Tel: (619) 546-6786
7  Fax: (619) 546-0831
   Email: Sabrina.Feve@usdoj.gov
8
9  Attorneys for the United States

10
# UNITED STATES DISTRICT COURT
11
## SOUTHERN DISTRICT OF CALIFORNIA
12

13 | UNITED STATES OF AMERICA,

14 | Plaintiff,

Case No.: '15 MJ 0 4 9 0

**COMPLAINT FOR VIOLATION OF:**

15 | v.

16 | JULIO GONZALEZ (1),
    NIDAL FDAWI (2),
17
18 | Defendants.
19

Title 18, U.S.C., Sec. 371 (Conspiracy to Commit Fraudulent Transfer of Property); Title 18, United States Code, Section 1349 (Conspiracy to Commit Bank Fraud); Title 18, U.S.C., Sec. 1957 (Money Laundering); Title 18, U.S.C., Secs. 981(a)(1)(C), 982(a)(2)(B), 982(b), Title 21, U.S.C., Sec. 853, and Title 28, U.S.C., Sec. 2461(c) (Criminal Forfeiture)

The undersigned Complainant, being duly sworn, states:

## COUNT 1

### (Conspiracy to Commit Fraudulent Transfer of Property)

Introductory Allegations

At all times relevant to this Complaint:

*Complaint*                         1

1.  On June 24, 2009, SLE Metal, Inc. filed a Chapter 7 bankruptcy petition in Bankruptcy Case No. 8:09-bk-16252-RK.

2.  SLE Metal, Inc.'s bankruptcy petition listed the company's assets and included among the list of assets an anticipated tax refund of approximately $1,047,625.

3.  Upon filing the Chapter 7 bankruptcy petition, SLE Metals Inc.'s assets became part of the bankruptcy estate. These assets were then subject to the control of the Bankruptcy Trustee.

4.  On or about December 29, 2009, the U.S. Treasury issued three tax refund checks to SLE Metal, Inc. that totaled $1,014,484.69.

## The Conspiracy

5.  Beginning in or about February 2010, and continuing up to and including on or about March 4, 2010, within the Southern District of California and elsewhere, defendants JULIO GONZALEZ and NIDAL FDAWI did knowingly, intentionally, and willfully agree and conspire with uncharged coconspirators #1, and #2, individually and as officers and agents of SLE Metal, Inc., the debtor in Bankruptcy Case No. 8:09-bk-16252-RK, to knowingly and fraudulently and with intent to defeat the provision of Title 11, transfer to, and willfully aid and abet in the transfer to, themselves property belonging to the estate of the debtor, specifically, three U.S. Treasury checks totaling approximately $1,014,484.69; and by causing this transfer, thereby causing a loss of assets to the debtor of these funds, in violation of Title 18, United States Code, Section 152(7).

## Manner and Means

6.  The objects of the conspiracy were carried out, and to be carried out, in substance as follows:

    a.  Uncharged coconspirator #1 would obtain the three U.S. Treasury checks and not disclose their receipt to the Bankruptcy Trustee.

*Complaint*  2

  b. Uncharged coconspirator #1 would provide the three U.S. Treasury checks to defendant GONZALEZ, rather than to the Bankruptcy Trustee.

  c. Defendant GONZALEZ would find one or more people, to include uncharged coconspirator #2 and defendant FDAWI, to cash the checks.

  d. Defendants GONZALEZ and FDAWI would divide the cash between themselves and uncharged coconspirators #1 and #2.

## Overt Acts

7. In furtherance of the conspiracy and to accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere on or about the dates set forth below:

  a. In February 2010, uncharged coconspirator #1 gave defendant GONZALEZ the U.S. Treasury checks and asked him to find someone who could cash them.

  b. In February 2010, defendant GONZALEZ gave the checks to uncharged coconspirator #2.

  c. On March 1, 2010, uncharged coconspirator #2 gave FDAWI the three U.S. Treasury checks.

  d. On March 1, 2010, defendant FDAWI and his wife visited the San Diego County Recorder's Office, where his wife applied for and received a Fictitious Business Name in the name of "SLE METAL IN."

  e. On March 1, 2010, defendant FDAWI and his wife visited a Chula Vista Wells Fargo bank branch. At the bank, she opened a business account in the name of "SLE METAL IN" and deposited the three U.S. Treasury checks into that account.

  f. On or about March 4, 2010, defendant FDAWI's daughter visited a Wells Fargo branch in Bonita and attempted to transfer $100,000 from the "SLE METAL IN" account into a different bank account controlled by FDAWI.

*Complaint*          3

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

### (Conspiracy to Commit Bank Fraud)

8. The allegations in Paragraphs 1 through 7 are incorporated and re-alleged by reference in this Count.

9. Beginning in or about February 2010, and continuing up to and including on or about March 4, 2010, within the Southern District of California and elsewhere, defendants JULIO GONZALEZ and NIDAL FDAWI knowingly and intentionally conspired and agreed with each other and uncharged coconspirators #1 and #2 to devise a material scheme and artifice to defraud Wells Fargo, a FDIC-insured financial institution, and to obtain money, funds, credits, and property under the custody and control Wells Fargo, a FDIC-insured financial institution, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### Manner and Means

10. The objects of the conspiracy were carried out, and to be carried out, in substance as follows:

    a. Defendants GONZALEZ, FDAWI, and uncharged coconspirators #1 and #2, would obtain the three U.S. Treasury Checks issued to SLE Metal, Inc.

    b. Defendants GONZALEZ, FDAWI, and uncharged coconspirators #1 and #2, would cause these checks to be cashed by means of fraud.

    c. Defendants GONZALEZ, FDAWI, and uncharged coconspirators #1 and #2, would split the proceeds.

All in violation of Title 18, United States Code, Section 1349.

//
//

*Complaint*  4

## COUNT 3

### (Money Laundering)

11. On or about March 1, 2010, in the Southern District of California, defendants JULIO GONZALEZ and NIDAL FDAWI, did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of three U.S. Treasury checks, such property having been derived from a specified unlawful activity, that is, fraudulent transfer of property in violation of Title 18, United States Code, Section 152(7).

In violation of Title 18, United States Code, Section 1957.

### FORFEITURE ALLEGATIONS

12. The allegations contained in Counts 1, 2, and 3 above are realleged herein and incorporated as a part hereof for purposes of seeking forfeiture of property of defendants JULIO GONZALEZ and NIDAL FDAWI to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(b), and Title 28, United States Code, Section 2461(c).

13. Upon conviction of one or more of the offenses in Counts 1, 2, and 3, defendants JULIO GONZALEZ and NIDAL FDAWI shall forfeit to the United States 1) any personal property that was used or intended to be used to commit or to facilitate the commission of the offense; and 2) any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offense.

14. If any of the property described above, as a result of any act or omission of defendants JULIO GONZALEZ and NIDAL FDAWI, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute

property up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(B), 982(b); and Title 28, United States Code, Section 2461(c).

This complaint is based on the attached Statement of Facts incorporated herein by reference.

ROBERT MCAFFE
Special Agent
U. S. Secret Service

Sworn to me and subscribed in my presence this 12th day of February 2015.

HON. RUBEN B. BROOKS
U.S. Magistrate Judge

*Complaint*

6

## STATEMENT OF FACTS

I, Robert McAfee, being duly sworn, state:

1. I have been a Special Agent with the United States Secret Service for approximately 16 years. I am assigned to the San Diego Regional Fraud Task Force and have investigated over 100 cases involving identity theft, bank fraud, wire fraud, the use of stolen and/or manufactured counterfeit or forged checks, and cases involving the manufacture or use of stolen or fraudulent personal identification cards, bank bust-outs and non-sufficient funds checks, cases involved with skimming credit cards and debit cards, and counterfeit debit and credit card investigations. I am familiar with schemes commonly employed by persons who commit these types of violations. I have received over 200 hours of specialized training in fraud, forgery, counterfeit currency detection, and identity theft and am a graduate of the Federal Law Enforcement Training Center. This training and experience forms the basis for opinions I express below.

2. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of victims; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a Complaint and Arrest Warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

### Background of the Investigation

3. In March 2010, a San Diego investigator with Wells Fargo Bank called the U.S. Secret Service (USSS) to report suspicious activity involving three U.S.

*Complaint*    1

Treasury checks. USSS Special Agent Richard LaTulip responded to the call and learned that the three U.S. Treasury checks were issued to a Los Angeles-area company called SLE Metal, Inc. as part of its tax refund; that SLE Metal Inc. was in bankruptcy proceedings; and that defendant FDAWI had attempted to deposit the three U.S. Treasury checks at a Chula Vista Wells Fargo branch using a San Diego County Fictitious Business Name issued to "SLE METAL IN." Special Agent LaTulip, Federal Bureau of Investigation (FBI) Special Agent Marcie Soligo, and I investigated this matter. Based on our investigation, I am aware and believe the following:

## The Tax Refund Checks

4. On June 24, 2009, SLE Metal, Inc. filed a Chapter 7 bankruptcy petition in Bankruptcy Case No. 8:09-bk-16252-RK. Coconspirator #1 (hereafter, CC #1), the CEO of SLE Metal Inc., signed the Chapter 7 petition under penalty of perjury and in his capacity as a member of the Board of Directors. The bankruptcy petition and its attached schedules listed liabilities totaling $61,382,737.62 and assets totaling $3,897,454.

5. Upon filing the petition, SLE Metals Inc.'s assets became part of the bankruptcy estate subject to the control of the Bankruptcy Trustee, Karen Naylor. These assets included anticipated tax refunds for 2006, 2007, and 2008. On September 4, 2009, during a recorded creditors' meeting, Naylor told CC #1 that all checks, including any tax refund checks, were "not to be deposited anywhere. . . . That should be turned over to me." CC #1 responded, "Okay."

6. On October 2, 2009, Naylor emailed SLE Metal Inc.'s bankruptcy attorney to ask about the status of the amended tax returns. He said he would check and get back to her. On October, 2, 2009, IRS records indicate that SLE Metal Inc.'s accountant called the IRS to ask about the status of the amended tax return. During

the call, the accountant updated the company's contact information and provided the name Sam Lee Enterprises, Inc., at 2900 North Alameda, Compton, California.

7. In late November and early December 2009, the accountant submitted amended paperwork in support of the 2006 and 2007 tax refund applications, as well as an amended corporate tax return for 2008. In March 2010, Agents LaTulip and Soligo interviewed SLE Metal, Inc.'s accountant. The accountant reported that CC #1 began calling him about the tax returns in August or September 2009 and, he believes, called him on October 2, 2009 to learn about the status of the amended returns.

8. On or about December 29, 2009, the IRS accepted the amended tax returns for 2006, 2007, and 2008 and issued three U.S. Treasury checks totaling $1,047,625. The checks were mailed to 2900 North Alameda, Compton, California. This address belonged, at all relevant times, to A to Z Metals. CC #1 partly owned both A to Z Metals and SLE Metal Inc. Defendant GONZAELEZ worked for both companies as a scrap metal buyer.

## The Diverted Checks

9. The USSS and FBI interviewed employees of A to Z Metals, including the receptionist at A to Z Metals. The receptionist recalled that, in early 2010, CC #1 kept asking if some checks had arrived. She did not remember if she saw U.S. Treasury checks, but she did recall that checks arrived in early 2010 and people were happy.

10. The USSS interviewed defendant GONZALEZ in April 2010, and recorded his voluntary interview. According to GONZALEZ, he worked for both SLE Metal, Inc. and A to Z Metals as a scrap metal buyer. GONZALEZ said that he knew that SLE Metal, Inc. was in bankruptcy proceedings in or about late 2009 and early 2010. According to GONZALEZ, in February 2010, CC #1 gave GONZALEZ the three U.S. Treasury checks and asked him to cash them. GONZALEZ then contacted CC #2 and asked him to help cash the checks. GONZALEZ gave the

Complaint                                                3

checks to CC #2 and knew that CC #2 then gave FDAWI the checks to cash. GONZALEZ said that FDAWI wanted a 25% cut for cashing the checks. GONZALEZ denied that he was to receive a cut himself from cashing the checks.

11. Both FDAWI and his wife agreed to be interviewed. According to defendant FDAWI, on March 1, 2010, he got the U.S. Treasury checks from CC #2. FDAWI and his wife then went to the San Diego County Recorder's Office, where FDAWI's wife applied for and received a Fictitious Business Name for "SLE METAL IN." They then went to a Chula Vista Wells Fargo, where they opened a business account using the Fictitious Business Name and deposited the three checks. Agents interviewed bank employees who assisted FDAWI and his wife on March 1, 2010, and the employees corroborated this information.

12. On or about March 4, 2010, FDAWI's daughter visited a Wells Fargo branch in Bonita, California, and attempted to transfer $100,000 from the account opened by her parents to a different bank account controlled by FDAWI. A bank employee spotted the difference between the name on the checks, "SLE Metal Inc." and the name on the business account "SLE METAL IN," and put a hold on the transfer.

13. After the employee placed the hold, Wells Fargo bank investigator Terry Johnson phoned FDAWI to ask where the checks came from. FDAWI told Johnson that he got the checks from CC #2 and provided CC #2's phone number. Johnson called CC #2, who said that he got the checks from GONZALEZ. Johnson then froze the account and contacted the USSS.

14. During his recorded interview, FDAWI told agents that he and CC #2 planned to use the money from the checks to buy scrap metal, which they would then re-sell to SLE Metal Inc. for a 15% profit. Based on my training and experience, paying cash for scrap metal that was then re-sold at a 15% mark-up to a company controlled by CC #1 would be a way to launder the proceeds of the diverted checks

*Complaint* 4

and also compensate the coconspirators who diverted the checks from the bankruptcy estate. FDAWI admitted to agents that he was not an SLE Metal Inc. employee and that his cashing the checks seemed suspicious.

15. At this time, I believe that GONZALEZ, FDAWI, and CC #1, while aware of this investigation, are unaware that the USSS and FBI plan to arrest GONZALEZ and FDAWI. Because I believe that premature disclosure of this affidavit could result in flight and the destruction of evidence, I request that it be sealed until further order of the Court.

ROBERT MCAFEE
Special Agent
U.S. Secret Service

Sworn to me and subscribed in my presence this 12th day of February 2015.

HON. RUBEN B. BROOKS
U.S. Magistrate Judge